UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Amanda Maynard

    v.                                           Civil No. 16-cv-419-LM
                                                  Opinion No. 2017 DNH 188
Nancy A. Berryhill, Acting
Commissioner of Social Security[1]

## **O R D E R**

Amanda Maynard seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying her application for social security disability benefits. Because the Administrative Law Judge ("ALJ") erred in her assessment of Maynard's residual functional capacity by improperly evaluating and weighing the medical evidence, the court remands the case to the Social Security Administration.

## **Standard of Review**

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017, replacing Carolyn W. Colvin. See Fed. R. Civ. P. 25(d).

facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

**Background**[2]

On July 26, 2013, Amanda Maynard applied for social security disability benefits, claiming a disability that began on June 19, 2013. Maynard alleged that she was disabled because of chronic obstructive pulmonary disease ("COPD"), effects of a brain aneurysm, severe left main coronary artery disease, hyponatremia, and degenerative disc disease. Maynard was 50 years old at the time of her application. She had previously worked as a medical device assembler, production supervisor, and a medical assistant.

---

[2] The background information is summarized from the parties' joint statement of material facts. See LR 9.1(c).

I.  Medical Evidence

The medical evidence in the administrative record begins on June 5, 2013, when Maynard was diagnosed with "advanced cervical degenerative disc disease at multiple levels." That same day, Dr. Kishori Somyreddy of Cocheco Neurology noted at her physical exam that Maynard had "decreased cervical range of motion, restriction of neck flexion and extension," and instructed Maynard to wear a soft neck brace and to avoid heavy exertion or lifting. Maynard subsequently had an MRI exam, which showed, among other things, straightening of the cervical spine and multilevel spinal stenosis. Dr. Somyreddy recommended epidural steroid injections, encouraged Maynard to take ibuprofen, and prescribed tramadol. Maynard had ongoing treatment for her back and neck pain throughout 2013.

On June 19, 2013, Maynard was admitted to Frisbie Memorial Hospital after suffering a subarachnoid hemorrhage. A CT scan also showed a left posterior communicating artery aneurysm. Maynard was transferred to Dartmouth-Hitchcock Medical Center later that same day, and was hospitalized there from June 19 until July 13, 2013, undergoing several operations and procedures during her stay. When she was discharged on July 17, Maynard was restricted to lifting three-to-five pounds, advised to restrict strenuous activity, and directed not to drive until

cleared by neurosurgery.  She received clearance to drive in July 2014.  Maynard's prescriptions included aspirin, Keppra (an anti-convulsant), and a narcotic pain medication.

On August 27, 2013, Maynard had a follow-up appointment at Dartmouth-Hitchcock with Dr. David Roberts and Dr. David Soucy, PA-C.  Maynard reported that she was doing well and that she noticed increased left eye opening about a week and a half prior to the appointment.  Maynard had left eyelid ptosis, her left pupil was approximately four millimeters and nonreactive, and she had a third ocular nerve palsy.  PA Soucy told Maynard to remain on Keppra for at least a year, and continue to take aspirin.

On October 14, 2013, Dr. Hugh Fairley, a state agency consultative physician, reviewed Maynard's medical records of physical impairments.  Dr. Fairley opined that Maynard was limited to lifting and carrying up to 10 pounds occasionally and frequently and that she was limited to standing and/or walking for up to four hours and sitting up to six hours in an eight-hour workday.  He further opined that Maynard was limited to occasionally climbing ramps, stairs, ladders, ropes, or scaffolds, as well as occasionally balancing, stooping kneeling, crouching and crawling.  Dr. Fairley also opined that Maynard had no manipulative or visual limitations, but that her speaking

4

was limited and she needed to avoid work requiring constant and verbal communications.

On October 29, 2013, Maynard saw Dr. Clifford Eskey. Dr. Eskey concluded that Maynard suffered from easy fatiguability, sensory overload, and word finding problems, which were slowly improving. Dr. Eskey assessed that Maynard continued to recover from the subarachnoid hemorrhage, and noted that Maynard would be evaluated by vocational therapy about returning to work, at least on a part-time basis initially.

Maynard continued to feel no significant improvement in her cervical neck pain through early 2014. She received two cervical epidural steroid injections, on November 6, 2013 and January 7, 2014, to alleviate the pain.

II. Function Report

On September 3, 2013, Maynard submitted a Function Report to the Social Security Administration. Maynard wrote in the Function Report that she was limited in her ability to work because she was currently "healing from an aneurysm in [her] brain with a blood clot in it" and that she was not allowed to drive to work.

Maynard also wrote that she did not do any heavy lifting, and that she was limited to lifting three-to-five pounds. She wrote that she had difficulty with her memory, and trouble

5

completing tasks because of a short attention span. She further reported that she was anxious and did not handle changes in her routine well. In addition, she wrote that she had limited vision, but noted that she wore glasses.

III. <u>Hearing Before the ALJ</u>

A hearing before an ALJ was held on Maynard's application in June 2015. Maynard was represented by an attorney and testified at the hearing.

Maynard testified about her symptoms and daily activities. She stated that she had made a few attempts to return to work in August, September, and December 2014, each of which lasted between a few days and three weeks. She testified that, in May 2015, she had begun a temporary position at Meals on Wheels, working 11 to 18 hours per week as a driver/backup position and learning the site work, including preparing meals.

Maynard also testified that she fatigued easily, was lightheaded, and had double vision at all times, especially when altering eye movements. She also stated that she had nerve pain in her left eye, which was sometimes chronic.

She further testified that tilting her head down and sitting straight up "ma[de]things worse" because of her cervical disc disease, but that she did not think she would have trouble standing or walking for periods of time and that she was able to

6

lift and carry up to 15 pounds. Maynard stated that when she had tried to return to work in a packaging position, her neck was aggravated by looking down and trying to pick up small pieces with tweezers was difficult because of her depth perception issues.

Maynard stated that she experienced nerve pain in her left eye once or twice a week and that she would lie down, close her eyes and sit quietly, or take ibuprofen to relieve that pain. Maynard also stated that she needed to rest her eyes at times, usually when she was reading, using the computer, or following a recipe, but that she did not need to do so during her current job at Meals on Wheels.

A vocational expert testified at the hearing. The ALJ asked the vocational expert to assume that the claimant was capable of performing work at the light level, but with certain limitations. The expert testified that the claimant could perform the jobs of linen sorter, small parts assembler, and packager.

IV. <u>ALJ's Decision</u>

The ALJ issued an unfavorable decision on July 14, 2015. The ALJ found that Maynard had severe impairments due to a history of subarachnoid hemorrhage, COPD, cervical stenosis, and obesity. The ALJ also discussed numerous impairments that were

medically determinable, but not severe within the meaning of the Act. She also found that Maynard's impairments did not meet or equal a listed impairment. The ALJ concluded that Maynard had the residual functional capacity to do light work under 20 C.F.R. § 404.1567(b), except that she is limited to standing and walking a combined maximum of four hours out of an eight-hour workday. The ALJ also concluded that Maynard should avoid work requiring constant verbal communication, that she is limited to work involving occasional depth perception and frequent near acuity, and that she cannot perform complicated or detailed tasks.

With that evaluation, the ALJ found that Maynard could not do her past relevant work as a medical assistant, a medical device assembler, or a production supervisor. At step five of the sequential analysis, relying on vocational expert testimony, the ALJ found that there were jobs in significant numbers in the national economy that Maynard could perform, including such representative occupations as linen sorter, small parts assembler, and bagger. Therefore, the ALJ found that Maynard was not disabled within the meaning of the Act. The Appeals Council denied Maynard's request for review, making the ALJ's decision the Acting Commissioner's final decision.

**Discussion**

In support of her motion to reverse the Acting Commissioner's decision, Maynard contends that the ALJ erred in her assessment of Maynard's residual functional capacity by improperly evaluating and weighing the medical evidence, failing to properly consider "other source" evidence, and not addressing Maynard's non-severe impairments. The Acting Commissioner moves to affirm.

In determining whether a claimant is disabled for purposes of social security benefits, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520. The claimant bears the burden through the first four steps of proving that her impairments preclude him from working. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

At the fourth step of the sequential analysis, the ALJ assesses the claimant's residual functional capacity, which is a determination of the most a person can do in a work setting despite her limitations caused by impairments, see 20 C.F.R. § 404.1545(a)(1), and her past relevant work, see id. at § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, the ALJ will find that the claimant is not disabled. See id. at § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ proceeds to the

fifth step. At the fifth step, the Acting Commissioner has the burden of showing that jobs exist which the claimant can do. Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991). The ALJ's residual functional capacity assessment is reviewed to determine whether it is supported by substantial evidence. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); Pacensa v. Astrue, 848 F. Supp. 2d 80, 87 (D. Mass. 2012).

I. Weighing Medical Evidence

An ALJ is required to consider the medical opinions along with all other relevant evidence in a claimant's record. 20 C.F.R. § 404.1527(b). Medical opinions are evaluated based on the nature of the medical source's relationship with the claimant, the consistency of the opinion with the other record evidence, the medical source's specialty, and other factors that may be brought to the ALJ's attention. § 404.1527(c). The ALJ may rely on opinions of state agency consultant physicians under the same analysis as that applied to opinions of treating or examining medical sources. § 404.1527(e); Ormon v. Astrue, 497 F. App'x 81, 84 (1st Cir. 2012); Smallidge v. Colvin, No. 13-cv-80-SM, 2014 WL 799537, at *5 (D.N.H. Feb. 28, 2014).

Maynard argues that the ALJ did not provide an adequate basis for rejecting certain medical opinions in the record in

determining her residual functional capacity. Specifically, Maynard challenges the ALJ's rejection of Dr. Fairley's opinion about her ability to lift and carry and the ALJ's failure to give adequate reasons for rejecting that opinion.

As mentioned, the ALJ concluded that Maynard had the residual functional capacity to do light work under § 404.1567(b), with certain limitations. In making that determination, the ALJ gave significant weight to most of Dr. Fairley's opinions, but rejected the opinion that Maynard was limited to lifting and carrying up to 10 pounds. In explanation, the ALJ noted that "[a]t the hearing, the claimant testified that she is capable of lifting fifty pounds." Admin. R. at 31.

The transcript of Maynard's testimony, however, shows that she testified that the heaviest weight she could lift or carry was "[u]p to 15 [pounds]." Admin. R. at 68. In their joint statement of facts, the parties state that Maynard testified "that she was able to lift and carry up to 15 pounds." Doc. no. 11 at 16. Thus, the ALJ's statement that Maynard testified that she is capable of lifting 50 pounds is incorrect.

The ALJ also gave little weight to Dr. Fairley's opinion that Maynard was limited to lifting 10 pounds because "none of the claimant's treating physicians have ever found that the

11

claimant has these limitations" and that "there is no medical evidence of record to show that the claimant is limit[ed] to lifting ten pounds." Admin R. at 31. Although none of Maynard's treating physicians opined that she was limited to lifting 10 pounds, none of those physicians opined that she could lift more than 10 pounds, either. Therefore, the lack of a second medical opinion limiting Maynard to lifting 10 pounds is not a sufficient justification for giving Dr. Fairley's opinion limited weight.

Further, the ALJ did not explain why Dr. Fairley's opinion that Maynard was limited to lifting 10 pounds was inconsistent with other medical evidence in the record. The only other evidence in the record cited by either party regarding limitations on Maynard's ability to lift or carry is 1) Maynard's July 17, 2013 discharge records from Dartmouth-Hitchcock and 2) Maynard's September 3, 2013 Function Report. In the discharge order, Maynard was told not to lift more than three-to-five pounds. Admin R. at 693. Maynard similarly stated in her Function Report that her conditions limited her to lifting three-to-five pounds. Id. at 261.

Thus, there is evidence in the record that Maynard was either limited to lifting 1) three-to-five pounds (Maynard's discharge order and Function Report), 2) 10 pounds (Dr.

12

Fairley's opinion), or 3) 15 pounds (Maynard's testimony at the administrative hearing). The ALJ apparently did not consider the three-to-five pound limitation and mistakenly thought Maynard testified that she could lift 50 pounds. Had the ALJ agreed with Dr. Fairley's opinion that Maynard was limited to lifting 10 pounds, she would have had the residual functional capacity to do only sedentary work, rather than light work. See § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time . . . .").

In contrast, to do light work, Maynard would have to have the ability to lift and carry more weight than the record supports. See § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."); Hart v. Astrue, 32 F. Supp. 3d 227, 234 (N.D.N.Y. 2012) ("Plaintiff reads Dr. Magsino's opinion as stating that Plaintiff was not capable of lifting more than 15 pounds. If that was the case, Plaintiff would be precluded from performing light work."); see also Fuentes v. Colvin, No. 14-CV-03346-KLM, 2016 WL 1068390, at *4 (D. Colo. Mar. 18, 2016) ("Light work requires a person to be able to lift twenty pounds at a time.").

The ALJ's decision appears to be based on her mistaken interpretation of Maynard's testimony. As a result, the ALJ's

13

residual functional capacity assessment is not supported by substantial evidence. See, e.g., Smith v. Colvin, No. 15-cv-48-JD, 2015 WL 5822450, at *4 (D.N.H. Oct. 5, 2015); Jabre v. Astrue, No. 11-cv-332-JL, 2012 WL 1216260, at *9 (D.N.H. Apr. 5, 2012).

II.  Remaining Arguments

Because the ALJ's residual functional capacity determination is not supported by substantial evidence for the reasons stated above, the court does not address Maynard's additional arguments, which may be addressed in the context of the administrative proceedings on remand.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse and remand (doc. no. 8) is granted.  The Acting Commissioner's motion to affirm (doc. no. 10) is denied.

The case is remanded to the Social Security Administration under sentence four of § 402(g).  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 14, 2017
cc:  Sarah E. Lavoie, Esq.
     T. David Plourde, Esq.

14